IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,

vs.                                Case Nos.:        4:14cr81/RH/CAS
                                                    4:17cv359/RH/CAS

BRIAN C. SANDERS,
    Reg. No. 23210-017,
    Defendant.

_____

## **REPORT AND RECOMMENDATION**

This matter is before the court upon Defendant Brian C. Sanders's

Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255

and supplements, the Government's response and Sanders' reply.   (ECF

No. 75, 77, 82, 85, 89.)   Sanders also moved to amend his § 2255 motion

to add a claim pursuant to *Rehaif v. United States*, 139 S. Ct. 2191 (2019),

the Government filed a response and Sanders' replied.   (ECF Nos. 92, 95,

97, 98, 102.)   The case was referred to the undersigned for the issuance

of all preliminary orders and any recommendations to the district court

regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28

U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After review of the record, the

court recommends that the § 2255 motion, as amended, be denied without

an evidentiary hearing.    *See* Rules Governing Section 2255 Cases 8(a)

and (b).

## I.    BACKGROUND

Brian C. Sanders was charged in a single count superseding

indictment with possession of a firearm and ammunition by a convicted

felon in violation of § 922(g)(1) and 924(e).    (ECF No. 13.)    The charges

stemmed from complaints to the Tallahassee Police Department about two

separate assaults involving firearms.    (ECF No. 54, PSR ¶ 6.)    The first

one involved Sanders allegedly threatening to shoot an employee of a

beauty salon on August 1, 2014.    While an officer was at the beauty salon

responding to the complaint, he received a report of a man threatening kids

with a firearm at a nearby car wash.    The officer proceeded to the car

wash where he encountered Sanders and located a loaded firearm

Sanders had tried to hide on the scene.    Sanders was arrested and

charged with possession of a firearm by a convicted felon due to his four

prior felony convictions (*see* ECF No. 13; ECF No. 54, PSR ¶¶ 26, 27, 29,

31.)

Sanders was convicted after a brief trial at which he was represented

by retained attorney Paul Villeneuve, Esq.    (ECF Nos. 39, 66, 67.)

A Presentence Investigation Report ("PSR"), dated June 22, 2015, determined Sanders was subject to an enhancement under the Armed Career Criminal Act ("ACCA") due to two prior convictions for serious drug offenses and one prior conviction for fleeing and eluding law enforcement. (ECF No. 46, PSR ¶ 21.)   With the ACCA enhancement, his total offense level was 34 and his criminal history category was VI, yielding an advisory guidelines range of 262 to 327 months of imprisonment.   (*Id.*, PSR ¶¶ 23, 34, 78.)

On June 26, 2015, four days after the aforementioned PSR was prepared, the Supreme Court invalidated the residual clause of the ACCA in *Johnson v. United States*, 135 S. Ct. 2551 (2015).   This called into question whether Sanders could properly be classified as an armed career criminal, because Eleventh Circuit precedent considered the fleeing and eluding conviction to be an ACCA predicate under the now invalid residual clause.

On July 29, 2015, the United States Probation Office prepared a Second Final PSR ("PSR").   (ECF No. 50.)[1]   The probation officer

---

[1] What appears to be an identical document is also docketed as ECF No. 54 as a "revised Final Presentence Investigation Report".

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

determined that the Chapter Four enhancement no longer applied.

Therefore, Sanders' total offense level was reduced to 30, and his criminal

history category was reduced to IV.   (ECF No. 50, PSR ¶¶ 15-23, 33.)

The revised guidelines range of 135 to 168 months was reduced to 120

months due to the statutory maximum term of imprisonment.   (PSR ¶¶ 77-

78.)

The court sentenced Sanders below the adjusted range to a term of

106 months of imprisonment.   (ECF Nos. 52, 53.)   The sentence was

fashioned to take into account the time Sanders had already been in

custody and to yield a total custodial term of 120 months.   (ECF No. 69 at

48-51.)

On appeal, Sanders challenged the district court's admission of

evidence of his threats to the beauty salon employee hours before he was

arrested for the conduct charged in this case.   (ECF No. 73.)   The

Eleventh Circuit found no error in admitting the evidence, which it described

as "intrinsic" and having probative value.   (*Id.* at 5-6.)   The appellate court

also found no error in the fact that the district court did not give a limiting

instruction, as such an instruction was not requested.   (*Id.* at 6.)   It

affirmed on October 4, 2016.

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

Sanders timely filed his original motion to vacate in August of 2017 raising nine grounds for relief, and subsequently moved to amend the motion to add argument based on the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019).   The Government opposes the motion in its entirety.

## II.    ANALYSIS

A. <u>General Legal Standards</u>

"Section 2255 does not provide a remedy for every alleged error in conviction and sentencing."   *Spencer v. United States*, 773 F. 3d 1132, 1138 (11th Cir. 2014).   Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to section 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if

condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

A district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Furthermore, because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not

raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent."    *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted).    To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct."    *Lynn*, 365 F.3d at 1235.    A meritorious claim of ineffective assistance of counsel can constitute cause.    *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims generally are not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal.    *Massaro v. United States*, 538 U.S. 500, 503 (2003).    To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013).    In applying *Strickland*, the court may dispose of an ineffective

assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland*, 466 U.S. at 689. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel

would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*, 218 F.3d at 1315. When reviewing the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n.18.

To establish prejudice, a defendant must show that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*). For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

To establish ineffective assistance, a defendant must provide factual support for his contentions regarding counsel's performance.   *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test.   *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)). Furthermore, counsel is not constitutionally deficient for failing to preserve or argue a meritless claim.   *Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing *Freeman v. Attorney General, Florida*, 536 F.3d 1225, 1233 (11th Cir. 2008)).   This is true regardless of whether the issue is a trial or sentencing issue.   *See, e.g.*, *Sneed v. Florida Dep't of Corrections*, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless *Batson* claim not ineffective assistance of counsel);   *Lattimore v. United States*, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); *Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (counsel was not ineffective for failing to raise issues clearly lacking in merit).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between."   *Chandler*, 218 F.3d at 1313.   This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted.   *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000).   "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"   *Dingle*, 480 F.3d at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."   *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).   Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.   A

defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."    *See* 28 U.S.C. § 2255(b); *Rosin v. United States*, 786 F.3d 873, 877 (11th Cir. 2015); *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.    *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)).    To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief.    *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record.    *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even affidavits that amount to

nothing more than conclusory allegations do not warrant a hearing.   *Lynn*,

365 F.3d at 1239.   Finally, disputes involving purely legal issues can be

resolved by the court without a hearing.

   B. Sanders' Claims for relief

      1.   Limiting instruction regarding certain evidence

   Sanders first asserts that his Sixth Amendment right to effective

assistance of counsel was violated when counsel did not request a limiting

instruction after the Government introduced evidence about what transpired

at a hair salon before Sanders' arrest.   This issue was the subject of

Sanders' appeal.

   Tallahassee Police Officer Samuel Holton responded to the complaint

about someone being threatened at a hair salon.   After Holton had

interviewed the complainant and while he was writing his report, he heard a

call about an individual with a firearm at a nearby car wash.   He responded

to this call and observed Sanders bend down and either place something or

take something from underneath a car.   Holton later found a loaded pistol

where Sanders had bent down.

   The Eleventh Circuit found that the events at the salon were

inextricably intertwined with the events at the car wash and the evidence

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

was necessary to "complete the story of the crime for the jury."   (ECF No.

73 at 4.)   Thus, the evidence was intrinsic.   Although the events at the

hair salon were not strictly necessary to the Government's case, since

Sanders was not charged with that assault in this case, it helped create a

clear narrative so the jury could understand the sequence of events leading

to the discovery of the firearm and Sanders' arrest.   Furthermore, because

the gun was not in Sanders' possession when he was arrested, merely

near where he had been, the evidence that he had threatened to shoot

someone nearby just a couple hours earlier was relevant to proving

ownership of the gun.   (*Id.*)   The appellate court found no error in not

giving a limiting instruction because none had been requested.

Sanders now asserts that counsel was constitutionally ineffective

because he did not request the limiting instruction given that the evidence,

in his view, was cumulative, confusing and prejudicial.   The Eleventh

Circuit's assessment of the evidence is otherwise.   Furthermore, evidence

may not be excluded, or in this case, the subject of a limiting instruction,

merely because it is prejudicial.

The Eleventh Circuit found the evidence to be intrinsic.   Such

evidence is "linked in time and circumstances with the charged crime and

concerns the context, motive or setup of the crime; or forms an integral part

of the crime; or is necessary to complete the story of the crime."   *United*

*States v. U.S. Infrastructure, Inc.,* 576 F. 3d 1195, 1210 (11th Cir. 2009).

More significantly, the Eleventh Circuit has repeatedly found that such

evidence, which is "inextricably intertwined" with the charged conduct, is

admissible outside the scope of Rule 404(b), and should not be excluded

under Rule 403.   *United States v. Horner*, 853 F. 3d 1201, 1214 (11th Cir.

2017) (*quoting United States v. Ford*, 784 F. 3d 1386, 1394 (11th Cir.

2015)).

In any event, although different than a limiting instruction, the court's

instructions to the jury included a cautionary instruction.   The court

reminded the jury it was there "to determine only whether the Government

has proved beyond a reasonable doubt that Mr. Sanders is guilty of the

specific crime charged in this indictment."   (ECF No. 67 at 51-52.)   The

court also advised the jury that it "cannot convict Mr. Sanders of the charge

in the case just because at some earlier time he committed some other

offense."   (ECF No. 67 at 52.)   This comment was intended as a

reference to Sanders' prior felony conviction, not to what allegedly

happened at the hair salon, although it was arguably applicable to that incident as well.

Sanders has not shown that, had counsel requested a limiting instruction, such would have been given, or that it would have made a difference in the outcome of the case.   Therefore, he is not entitled to relief on this claim because he has not shown prejudice.

2. Court's response to Jury Question

Sanders next contends that counsel was constitutionally ineffective because he did not object to the district judge's response to the jury's question to the court about what would happen if it did not reach agreement.

The jury retired to deliberate at 10:27 a.m.   (ECF No. 67 at 59.)   At 2:56 p.m., court reconvened without the jury to address the question "What happens if we do not come to an agreement?"   (*Id.*)   The court advised the parties that the jury had not conveyed that it was deadlocked, so it did not intend to give the Modified *Allen* instruction at that time.   Instead, it provided the following response, which was slightly modified from a response it had used in another trial the previous week:

> When a jury fails to reach a unanimous verdict, the case is left open for possible trial to another jury. As I said in the original instructions, it is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other jurors. While you're discussing the case, do not hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But do not give your up (sic) honest beliefs just because the others think differently or merely to get the case over with.

(ECF No. 67 at 59-60.)

Sanders is mistaken to the extent he suggests that the court provided additional substantive instruction to the jury about the definition of possession of a firearm. (*See* ECF No. 75 at 7.) There was no new substantive jury instruction to which counsel could, or should, have objected. Sanders asserts that instead of answering the jury's question about what would happen if it could not reach a verdict, the court should have instructed the jury to rely on the instructions it had been given. There was no basis for a meritorious objection to the court's response to the jury's question. Counsel was not constitutionally ineffective and no relief is warranted on this claim.

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

### 3. Allen Charge (Grounds Two and Three)

In both his second and third grounds for relief Sanders references the court giving the jury a "modified *Allen* charge."   He asserts that counsel should have objected to the court giving the *Allen* charge, again insisting the court should have told the jury to rely on the instructions it already had.

The court recessed at 2:59 p.m. after discussing the response to the jury's first question, above.   It reconvened at 3:15 after receiving a second jury communication.   (ECF No. 67 at 60.)   At that point the jury's note stated "The jury is unable to reach an agreement.   We feel that we are divided and unable to progress to a verdict."   (*Id.*)   The court provided a copy of its Modified *Allen* charge to the parties, pointing out some minor differences between its charge and the standard Modified *Allen* charge.[2] The court then gave the jury the following instruction:

> Members of the jury, I got your note.   I'm going to ask that you continue your deliberations in an effort to reach an agreement on a verdict, and I have some additional comments for you to consider.

---

[2] Specifically, the court noted that there is "a sentence in the standard that says that the trial has been expensive in time, money, and mental anguish; obviously, another trial would only serve to increase the expense" and that it had removed the words "obviously" and "only" which have been criticized by the circuit before.   (ECF No. 67 at 60-61.)

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

This is an important case for both sides.   If you fail to agree on a verdict, the case will be left open to try to another jury. There's no reason to believe that the case can be tried again by either side any better or more exhaustively than it was tried before you.   Any future jury must be chosen in the same way you were.   There's no reason to believe new jurors will be more conscientious or more competent to decide the case than you are.   There's no reason to believe more or clearer evidence can be presented.

If a substantial majority of you are in favor of a conviction, those of you who disagree should reconsider whether your doubt is a reasonable one since it appears to make no effective impression on the minds of the others.   On the other hand, if a majority or even a lesser number are in favor of an acquittal, the rest of you should ask yourselves, again, whether you should accept the weight and sufficiency of the evidence that fails to convince your fellow jurors beyond a reasonable doubt. Remember, at all times that no juror is expected to give up an honest belief on the weight or effect of the evidence. But after full consideration of the evidence, it is your duty to agree on a verdict if you can do so.

You must also remember that, if the evidence fails to establish beyond a reasonable doubt that a defendant is guilty of the charge, your unanimous verdict must be not guilty.

You may be as leisurely in your deliberations as the occasion requires, and you should take all the time that's necessary. Here, as in other things, patience is a virtue.

I now ask that you continue your deliberation in light of these new comments and all of the instructions that I gave you earlier.

(ECF No. 67 at 61-62.)   The jury retired to deliberate again at 3:22 p.m.,

and court reconvened at 4:10 when it reached a verdict.   (*Id.* at 63.)

The trial court's authority to instruct a deadlocked jury to continue

deliberating arose over 100 years ago.   *Allen v. United States*, 164 U.S.

492, 501-02 (1896).   The Eleventh Circuit has criticized the practice, but it

is nonetheless approved in this circuit.   *United States v. Davis*, 779 F. 3d

1305, 1312 (11th Cir. 2015) (citing *United States v. Rey*, 811 F. 2d 1453,

1459-60 (11th Cir. 1987)).   The basis for Sanders' complaint about the

court giving the Modified *Allen* charge is not clear.   An *Allen* charge was

appropriate in this case and there was no basis for counsel to object.   The

jury deliberated approximately four hours before posing its initial question,

and it returned a verdict less than an hour after hearing the court's modified

*Allen* charge.   (ECF No. 67 at 63.)   There was nothing biased about the

language of the charge.   As the court noted in *Davis,* modified *Allen*

charges sometimes help the defendant.   *Davis,* 779 F. 3d at 1314.   Thus,

giving the *Allen* charge could have just as easily resulted in an acquittal.

Sanders has not shown counsel was constitutionally ineffective or that he is

entitled to relief.

    4.   Four-level enhancement pursuant to § 2K2.1(b)(6)(B)

    Sanders asserts that appellate counsel was constitutionally

ineffective when he did not include a challenge to the § 2K2.1(b)(6)(B)

adjustment on appeal.   Relevant to the facts of Sanders' case, this

enhancement applies to firearms offenses where the defendant used or possessed any firearm in connection with another felony offense.

The adjustment was not applied in the first two versions of the PSR, and it would not have affected Sanders' offense level in those PSRs in any event due to the Chapter Four Enhancement.   (ECF Nos. 43, 46.) However, in the Second Final PSR,[3] prepared two weeks before sentencing, the Chapter Four Enhancement was removed. Simultaneously, in response to a suggestion from the Government, the Probation Officer determined that the § 2K2.1(b)(6)(B) enhancement was appropriate because Sanders had possessed the firearm "in connection with two separate felony offenses of aggravated assault with a firearm." (ECF No. 50, PSR ¶¶ 16, 110, 111.)   At the time the revised report was prepared, the probation officer indicated that the defense position about this adjustment was unknown.   (PSR ¶ 111.)

At sentencing, Mr. Villeneuve objected to the enhancement, asserting that there was insufficient evidence to establish that an assault had occurred either at the hair salon or at the car wash.   (ECF No. 69 at 6-10.)

---

[3] Again, this PSR appears to be identical to ECF No. 54, the "Revised Final Presentence Investigation Report."

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

After hearing argument from the parties, the court reviewed the rough transcript of the testimony of the witness to the car wash incident.   (*Id.* at 17.)[4]   The witness expressly testified that Sanders had pulled out a gun and pointed it at a 15-year old boy.   The Government noted that the boy and his parents were interviewed by law enforcement, but the victim did not want to give a written statement or get involved.   (*Id.* at 14.)   Based on the eyewitness testimony, that Sanders had pointed the gun at another person as part of an altercation, the court found Sanders had possessed the gun in connection with another felony.[5]   (*Id.*)   The issue was thus preserved for appeal, but, as Sanders' now complains, appellate counsel did not raise it.

Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.   *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).   However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so.   *Smith v.*

---

[4] The testimony in question is found at ECF No. 66 at 105.

[5] Sanders complains in his reply that the Government did not direct the court to a statute pursuant to which his behavior would have been a felony.   (ECF No. 89 at 15.) However, section 784.021, Florida Statutes, provides that an "aggravated assault" is an assault with a deadly weapon but without intent to kill, and that such a crime is a felony. The conduct described by the witness, although uncharged, appears to meet the definition of aggravated assault under Florida Law.

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

*Robbins*, 528 U.S. 259, 287–88 (2000); *Knowles v. Mirzayance*, 556 U.S. 111, 126–27 (2009); *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983); *Heath v. Jones*, 941 F.2d 1126, 1130–31 (11th Cir. 1991).   It is possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was constitutionally ineffective.   *Smith*, 528 U.S. at 288 (citing *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); *see also Payne v. United States*, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing *Smith*).   "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."   *Barnes,* 463 U.S. at 751–52.   In fact, this is the "hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986).   The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the counsel's performance, which must be judged in its entirety, was effective.   *Id.*; *Heath*, 941 F.2d at 1131 (counsel's appellate advocacy

must be judged in its entirety); *Reutter v. Secretary for Dept. of Corrections*, 232 F. App'x 914, 917 (11th Cir. 2007) (citing *Heath*).

To prevail on a claim for ineffective assistance of appellate counsel, a defendant must show that (1) appellate counsel's performance was deficient, and (2) but for counsel's deficient performance he would have prevailed on appeal.   *Shere v. Sec'y Fla. Dep't of Corr.*, 537 F.3d 1304, 1310 (11th Cir. 2008); *see Philmore v. McNeil*, 575 F.3d 1251, 1264 (11th Cir. 2009) (holding that claims for ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).   Counsel is clearly not ineffective for failing to raise a meritless issue on appeal.   *Shere*, 537 F.3d at 1311; *Ladd v. Jones*, 864 F.2d 108, 110 (11th Cir. 1989) ("[S]ince these claims were meritless, it was clearly not ineffective for counsel not to pursue them.").

Sanders argues in his reply brief that the fact he was charged only with simple assault, a misdemeanor, in state court as a result of the alleged threats at the beauty salon, provided a basis to challenge the adjustment on appeal.   (ECF No. 89 at 6-7.)   However, as support for the enhancement, the court appropriately relied on Sanders' conduct in

pointing the gun at another person during an altercation, which would have been a felony under Florida law, as noted above.   Sanders was not charged as a result of that incident, but that was not required.   Sanders cites application note 14(C) to § 2K2.1 which defines another felony offense as "any federal, state, or local offense, . . . punishable by imprisonment for a term exceeding one year, *regardless of whether a criminal charge was brought, or a conviction obtained*."   U.S.S.G. § 2K2.1, comment (n.14(C)) (emphasis added).   Sanders could have been charged with aggravated assault under § 784.021, Florida Statutes for pointing the gun at the boy at the car wash.

Because the enhancement was properly applied, appellate counsel cannot be held constitutionally ineffective for failing to raise this issue on appeal.   Sanders is not entitled to relief on this claim.

5. Admission of hearsay at trial

Sanders next claims that counsel was constitutionally ineffective because he did not object to certain testimony by Officer Samuel Holton. Officer Holton, the first witness to testify, was the officer who responded to the call about the events at the beauty salon.   Holton testified that he interviewed complainant Carlos Baker about what had transpired and got a

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

description of the suspect, but he and Officer Fox were unable to locate the individual.   Because they had been told the suspect said he was going to get a firearm and return, they attempted surveillance.   The officers moved their vehicles and observed the salon from a distance for approximately thirty minutes before they concluded the situation was over.   Not long after Officer Holton left, he received another call to respond to the hair salon. Holton again spoke with Mr. Baker, who told him the suspect had again come and gone.   When asked, "based on that, what did you do next?" Holton gave the testimony to which Sanders contends counsel should have objected.   Holton stated:   "Well, Mr. Baker alluded that he came in and continued the threat, had made movements towards his waistband as if to pull a firearm."   (ECF No. 66 at 29.)   While Officer Holton was filling out a report about the incident, he heard the dispatch call about an armed man at the nearby car wash.   (*Id.* at 29.)   Based on the information he had, Officer Holton believed the suspect might be the same person, so he responded to the call.   (*Id.* at 30.)

Sanders' assertion that Holton's testimony was inadmissible hearsay is mistaken.   The testimony in question was admissible to explain the effect on the listener, and what he did after hearing Baker's description.

The Government posits that the statement, taken in close temporal proximity to the event, was an excited utterance, admissible under Fed. R. Civ. P. 803(2).   The Government also suggests that either an objection to the testimony or a request for a limiting instruction would have drawn undue attention to the unfavorable evidence, so counsel could have made a strategic decision not to do either.   Finally, this court notes that Officer Holton's allegedly improper testimony was consistent with Mr. Baker's testimony about the event.   (ECF No. 66 at 88.)   Therefore, even if an objection to the testimony of Officer Holton would have been appropriate, the jury would have heard the same evidence from Mr. Baker.   The court cannot say that no competent counsel would have refrained from objecting during the testimony.   Sanders has shown neither deficient performance nor prejudice.

    6.  <u>Limiting instruction</u>

     Sanders also claims that counsel should have requested the court strike Officer Holton's statement about "a man threatening children with a firearm."   (ECF No. 66 at 31.)   Alternatively, he asserts that counsel should have requested a limiting instruction.

The testimony in question was, again, given by Officer Holton in describing the events leading to Sanders' arrest.   As Holton was writing his report about the incident at the beauty salon, he heard the dispatcher's call about the incident at the car wash.   Holton testified the "description that came out was a man threatening children with a firearm, driving a silver four—door Dodge pickup truck, dressed all in blue.   It was a little too much – it couldn't be coincidence."   (ECF No. 66 at 31.)   Having heard this, he responded to the scene.

As discussed in the previous section of this recommendation, Officer Holton's testimony about what he heard explained why he acted as he did. Although he was in the middle of writing his report and he was not the officer assigned to the call, he proceeded to the scene because of the similarities between the event at the salon and what was happening at the car wash (an armed man making threats in both temporal and geographic proximity).   Officer Holton's recitation of the facts as a man threatening "children" was overstated, as Sanders is only alleged to have pointed his gun at a single fifteen-year old boy, rather than multiple children.   Whether the error was in the dispatch report or his recounting of same is of no moment.   This did not render the testimony inadmissible.

Also, as in the previous section, the Government suggests that it was objectively reasonable for counsel not to request a limiting instruction because such an instruction could have drawn more attention to the unfavorable evidence.   Given the record as a whole, the undersigned is not convinced that either an objection to or a limiting instruction about the single statement of which Sanders complains would have altered the outcome of this case.   No relief is warranted.

7. *Brady* Claim

Sanders' seventh claim again focuses on the testimony of Officer Holton and what Holton heard on the day of Sanders' arrest.   He cites *Brady v. Maryland*, 83 S. Ct. 1194 (1963), although his claim has nothing to do with the disclosure of exculpatory evidence required by *Brady*. Sanders asserts counsel should have objected because the Government did not disclose prior to trial that it intended to introduce evidence about "another crime," although Sanders had already stipulated he was a convicted felon.

Officer Holton testified that while Sanders was in the back of the patrol car, Holton overheard Sanders threaten William Grant, the witness who reported the incident at the car wash.   (ECF No. 66 at 41-42.)   Holton

testified "I heard the words either kill or shoot.   I don't remember shoot first and kill second or kill first and shoot second, some further profanity, and then a response back from" the witness.   (*Id.* at 42.)   Holton did not recall whether it was he or his supervisor who requested that the complainant from the hair salon come to identify Sanders, but he recalled there were "just too many similarities" between the two cases.   (*Id.*)

Sanders claims the Government's use of this evidence was in violation of *Brady*, Rule 16 of the Federal Rules of Criminal Procedure, and Federal Rule of Evidence 404(b).   As noted above, *Brady* is inapplicable. Federal Criminal Rule 16 is also irrelevant here.   That rule applies to statements of the defendant made "in response to interrogation by a person the defendant knew was a government agent."   Fed. R. Crim. P. 16(1)(1)(A) and (B)(ii).   The Government nonetheless disclosed the information to defense counsel on December 23, 2014, in response to defense counsel's discovery request.   (ECF No. 82-1 at 4.)   This disclosure, while styled as pursuant to Rule 16, also complied with the notice provision of Rule 404(b)(2).

Sanders' statement would be probative with respect to his intent to possess a firearm.   *See, e.g., United States v. Swan,* Case CR-10-308-D,

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

2010 WL 5128132 (W. D. Ok. Dec. 6, 2010) (evidence of a defendant's verbal threats to shoot and hand gestures that connoted shooting were properly admissible under Rule 404(b), in case where defendant was not in possession of firearm at the time of his arrest).   As was the case in *Swan*, Sanders had purportedly abandoned the firearm before his arrest.   It was not in his possession at any point during his encounter with law enforcement.   His attempt to distance himself from the firearm increases the relevancy of the alleged threats about which both Holton and Grant testified.   (ECF No. 66 at 42, 109.)   Additionally, his threat to Grant was arguably evidence of consciousness of guilt.   There was no basis for a successful objection.

In his reply, Sanders argues that the undisclosed *Brady* evidence was audio or video evidence from an in-car recording system in Officer Holton's patrol car.   (ECF No. 89 at 24-25.)   He suggests that the recordings could have been exculpatory although he has no proof that any audio or video recording system was powered on when he made the alleged threat. Because his argument is speculative, he has not proven he is entitled to relief.

### 8.  Uncharged Crimes

Sanders claims that counsel should have objected to the introduction of information about unspecified uncharged crimes that occurred before his arrest on these charges.   (ECF No. 75 at 11.)   As discussed above, testimony about the incident at the hair salon, his threats against the 15-year old boy, and his threats to shoot/kill the witness who called the police was properly admitted.   Counsel was not ineffective for declining to make a meritless objection.   In any event, Sanders states in his reply that he abandons this claim.   (ECF No. 89 at 26.)

9. <u>Biased or Prejudiced Witness</u>

Sanders contends that counsel should have questioned the Government's chief witness, William Grant, "to see if he had contacts with the city of Tallahassee or the City Police Department" or whether Grant had "something to gain" by testifying against Sanders.   Sanders speculates that Grant's testimony was a "tool to secure certain favor from the police department or the City of Tallahassee" for his tow truck company.   (ECF No. 75 at 12.)   Sanders also states that further questioning could have uncovered that Grant and Sanders "may have had a prior altercation or bad dealings."   (ECF No. 75 at 12.)

Sanders offers only speculation that such a line of questioning would have uncovered anything of value.   Sanders was in the best position to advise counsel of a history of "bad dealings" between the two men, if such existed, and to place counsel on notice of the potential value in inquiring. Counsel is not charged with clairvoyance.   Furthermore, Grant testified on direct examination that he had not had any prior interaction with Sanders. (ECF No. 66 at 109.)

Counsel's cross-examination and closing argument attempted to discredit Grant's testimony.   Mr. Villaneuve suggested Grant did not have a clear view of what Sanders did at the car wash, Grant's testimony about what Sanders did with the gun was inconsistent with what Officer Holton described, and it was impossible for Sanders to have made threatening gestures with his hands while he was handcuffed in the patrol car.   (ECF No. 66 at 110-117; ECF 67 at 35-39.)   Counsel also asked, rhetorically, about Grant's motive for testifying.   (ECF No. 67 at 38.)

Sanders has not established that counsel's performance was constitutionally deficient, or that he was prejudiced by a failure to pursue this line of inquiry.   No relief is warranted on this claim.

10.   <u>Claim based on *Rehaif v. United States*, 139 S. Ct. 2191 (2019)</u>

On June 28, 2019, Sanders filed a Motion for Leave to Amend his pending § 2255 motion based on the Supreme Court's recent decision in *Rehaif.*   (ECF No. 92.)   In *Rehaif*, the Court held that to secure a conviction under § 922(g), the Government must prove that a defendant knew not only that he possessed a firearm, but also that he knew he was a prohibited person at the time he did so. The defendant in *Rehaif* was convicted of possessing a firearm as an alien who was illegally or unlawfully in the United States, not for possessing a firearm as a convicted felon.   Nonetheless, Sanders urges the court to allow him to amend Ground Two of his motion to argue that counsel was constitutionally ineffective because he did not challenge or emphasize the "knowingly" element of 18 U.S.C. § 922(g) and 924(a)(2) when court provided further instruction to the jury during its deliberations.   His proposed amendment is facially untimely.

Title 28 U.S.C. § 2255(f) imposes a one-year time limitation on the filing of motions under this section. The one-year period of time runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

    (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the petitioner was prevented from making a motion by such governmental action;

    (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Sanders contends that his proposed amendment is timely under 2255(f)(3) because it was filed within one year from the Supreme Court's *Rehaif* decision.   The Eleventh Circuit has held, in the context of an application to file a second or successive § 2255 motion, that *Rehaif* did not announce a new rule of constitutional law, and even if it had, the Supreme Court has not made it retroactive to cases on collateral review.   *In re Palacios*, 931 F. 3d 1314, 1315 (11th Cir. Jul. 30, 2019);[6]  *see also United States v. Class*, 930 F. 3d 460 (D.C. Cir. 2019) (holding that *Rehaif* resolved "question[s] of statutory construction," not the constitutional right

---

[6] The Government's response, filed August 14, 2019, does not cite *Palacios* and reaches the opposite conclusion.   (ECF No. 97 at 5); *see infra* at 37.

to due process).   To date, multiple district courts have also declined to find

*Rehaif* to be retroactive on collateral review.   *See, e.g., Yawn v. United*

*States.,* No. 8:16-CR-65-T-33JSS, 2020 WL 224546, at *2 (M.D. Fla. Jan.

15, 2020) (following *Palacios* and finding neither announced a new rule of

constitutional law nor had been made retroactive on collateral review);

*Moore v. United States*, Case 2:19cv2572-TLP-tmp, 2019 WL 4394755, at

*2 (W.D. Tenn. Sept. 12, 2019) (holding *Rehaif* was not retroactively

applicable to a first § 2255 petition); *United States v. Grigsby*, No. 12-

10174-JTM, 2019 WL 3302322, at *1 (D. Kan. July 23, 2019) (holding

*Rehaif* is a question of statutory interpretation, rather than constitutional

rights; finding *Rehaif* has not been made retroactively applicable) (appeal

pending); *Thompson v. United States*, No. 4:19-cv-2310 RLW, 2019 WL

4305450 (E.D. Mo. Sept. 11, 2019) (finding "no indication" *Rehaif* is

retroactively applicable, and also that it did not apply to the facts

presented); *Waters v. United States*, 4:15cr158-BHH, 2019 WL 3495998

(D. S.C. Aug. 1, 2019) (denying request for appointment of counsel to

present *Rehaif* argument, finding it did not provide a viable avenue for

relief); *United States v. Shobe*, Case 11-CR-0149-003-CVE, 2019 WL

3029111 (N.D. Okla. July 11, 2019) (dismissing second or successive

motion because *Rehaif* is not retroactive); *but see Warren v. United States*,

2:13-cr-270, 2:19-cv-16, 2019 WL 4010559 (W.D. Penn. Aug. 26, 2019)

(appointing counsel for the purpose of properly presenting *Rehaif* claim,

including issues of retroactivity, procedural default and waiver); *Boose v.*

*Marske*, Case 17-cv-303-jdp, 2019 WL 4393077, at *3 (W.D. Wisc. Sept.

13, 2019) (noting that Government conceded for the purposes of a request

to amend a § 2241 motion that *Rehaif* was retroactive, although proposed

amendment was futile because the Government has to prove defendant

knew he was in one of the categories enumerated in § 922(g) and he

knowingly possessed the prohibited item, but not that defendant knew he

was legally prohibited from possessing a firearm or ammunition).

Notwithstanding *Palacios* and the other cases, the Government concedes

that *Rehaif* applies retroactively to this case and that Sanders should be

allowed to amend his § 2255 motion, but that the three claims he purports

to raise are procedurally defaulted and barred.

    A.  First Motion to Amend

    In his first amendment, Sanders asserts that counsel was

constitutionally ineffective because he did not raise a belated objection to

the substantive jury instructions when the court was addressing the jury's

question about what would happen if it did not reach a verdict.   He asserts

counsel should have stressed the "knowingly violated" provisions of 18

U.S.C. § 922(g) and § 924(a)(2).   As noted previously, the court did not

provide additional substantive instruction to the jury at that time, and such

an objection, to previously-given instructions, would not have been

appropriate.   The claim will thus be liberally construed as a "stand-alone"

claim that counsel was ineffective for failing to raise this issue, unrelated to

the claim about the court's response to the jury question.

Under 18 U.S.C. § 922(g), persons falling within particular categories

are prohibited from possessing any firearm or ammunition that has been

transported in interstate commerce.   To secure a conviction under

§   922(g), the government must prove three elements: (1) the defendant

falls within one of the categories listed in the § 922(g) subdivisions ("the

status element"); (2) the defendant possessed a firearm or ammunition

("the possession element"); and (3) the possession was "in or affecting

[interstate or foreign] commerce."   *See* 18 U.S.C. § 922(g).   By its own

terms, § 922(g) does not have a mens rea requirement; instead, the

applicable mens rea is set out by § 924(a)(2), which provides that

"[w]hoever knowingly violates subsection ... (g) ... of section 922 shall be

fined as provided in this title, imprisoned not more than 10 years, or both."

18 U.S.C. § 924(a)(2).   Before *Rehaif*, the mens rea requirement applied

to the possession element, but not to the status element of § 922(g).   *See*

*United States v. Jackson*, 120 F. 3d 1226, 1229 (11th Cir. 1997) (per

curiam) (holding there was no error when the court did not instruct the jury

that it had to find defendant knew he had been convicted of a felony).

Sanders' claim based on *Rehaif*, which was not raised at trial, is

procedurally defaulted.   The jury instructions did not require the jury to

conclude Sanders knew he was a convicted felon, and he objected neither

before the district court nor on appeal.   (ECF No. 67 at 129, 177-78.)   As

noted by the Government in its response, at the time of Sanders' trial, no

circuit had ruled that the Government had to prove a defendant's

knowledge of his status as a person prohibited from possessing a firearm,

and the Eleventh Circuit had held to the contrary.   *See Jackson, supra.*

This does not end the inquiry.   The court must consider whether the claim

was available to Sanders, that is, whether the "building blocks" for making

such an argument were in place before the Supreme Court's ruling in

*Rehaif*.   *See McCoy v. United States,* 266 F. 3d 1245,1258 (11th Cir.

2001) (noting that the "building blocks" for defendant to make an *Apprendi*

*[v. New Jersey*, 530 U.S. 466 (2000)], claim existed years before the

Supreme Court's decision); *Bousley v. United States*, 523 U.S. 614, 622

(1998) (finding that petitioner had not shown cause for failing to raise a

*Bailey* [*v. United* States, 516 U.S. 137 (1995)] claim on direct appeal

because "at the time of petitioner's plea, the Federal Reporters were

replete with cases involving challenges to the notion that 'use' is

synonymous with mere 'possession.'"); *Pitts v. Cook*, 923 F. 2d 1568,

1569-73 (11th Cir. 1991) (holding petitioner had not demonstrated cause

when he failed to raise a *Batson* [*v. Kentucky*, 476 U.S. 79 (1986)] claim

when such had been raised in many other cases).   The test is whether a

petitioner had a means to assert the claim, not the means to prevail on it,

even if every other court to have addressed the issue had rejected it.

*Bousley*, 523 U.S. at 622-623; *McCoy*, 266 F. 3d at 1258.   Perceived

futility does not constitute cause to excuse a procedural default.   *McCoy*,

266 F. 3d at 1259 (citing *Bousley,* 523 U.S. at 623; *Smith v. Murray*, 477

U.S. 527, 535 (1996)).

    Even before Sanders' sentencing, the position later taken by the

Supreme Court in *Rehaif* had been litigated and had gained some favor.

*See United States v. Games-Perez*, 695 F. 3d 1104, 1124 (10th Cir. 2012)

(Gorsuch, J., dissenting from denial of rehearing en banc) (citing opinions seeming to approve the position later taken in *Rehaif*); *United States v. Games-Perez*, 667 F. 3d 1136, 1142-46 (10th Cir. 2012) (Gorsuch, J., concurring) (endorsing the position later taken in *Rehaif*).   Because some defendants had already started making the claim, the argument was "available" to Sanders, even if it would not have been successful due to contrary circuit precedent.   Therefore, Sanders' *Rehaif* claim is procedurally defaulted.   Several other courts have also found *Rehaif* claims procedurally defaulted on collateral review, as well as barred due to the litigant's inability to show cause and prejudice.   *See, e.g. United States v. Bryant*, Cases 11 CR 765, 16 CV 3423; 2020 WL 353424 (E.D. N.Y. Jan. 1, 2020) (holding *Rehaif* claim of defendant who pled guilty was procedurally defaulted, and defendant did not show cause and prejudice for counsel's failure to raise the claim); *Fleury v. United States*, Cases 16cv4712, 00cr076; 2019 WL 6124486, at *3 (S.D.N.Y. Nov. 19, 2019) (holding challenge premised on *Rehaif* was procedurally defaulted when defendant did not raise the issue at trial or on appeal, and did not demonstrate either prejudice or actual innocence to excuse his procedural default); *United States v. Wilson*, Case 1:17-CR-60, 2019 WL 6606340 (W.

D. Mich. 2019) (holding *Rehaif* challenge to guilty plea was procedurally defaulted and counsel was not constitutionally ineffective for failing to raise it either at trial or on appeal).

Ineffective assistance of counsel can provide cause to excuse a procedural default. *Nyhuis*, 211 F.3d at 1344. Sanders claims his attorney was constitutionally ineffective because he did not raise a *Rehaif* claim. Counsel is not ineffective for failing to preserve or argue a meritless claim. *Denson*, 804 F.3d at 1342 (citation omitted). Counsel was not ineffective in this case for arguing an issue in the face of contrary binding Eleventh Circuit precedent. *See Jackson*, 120 F. 3d at 1229 (holding that proof a defendant knew of his convicted felon status was not required for a § 922(g) conviction, and even if it was, defendant knew or should have known that he was a convicted felon).

Furthermore, neither trial nor appellate counsel was constitutionally ineffective for failing to anticipate a change in the law. *Rambaran v. Secretary, Department of* Corrections, 821 F. 3d 1325, 1334 (11th Cir. 2016); *Spaziano v. Singletary*, 36 F. 3d 1028, 1039 (11th Cir. 1994). Counsel is not charged with clairvoyance, and to meet *Strickland*'s standard, counsel is not required to make argument or raise objections

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

based on predictions as to how the law may develop.    *Denson*, 804 F.3d at 1344 (citing *Marquard v. Secretary, Dept. Of Corrections*, 429 F.3d 1278 (11th Cir. 2005)).    Although Sanders appears to be in a Catch-22 in that counsel would have had to raise a sure-fire losing claim to preserve it for later collateral review, this is not constitutionally required.    Sanders cannot show deficient performance of counsel that would excuse his procedural default.

Sanders may also avoid the procedural bar if he can show that the error of which he complains "has probably resulted in the conviction of one who is actually innocent."    *Bousley*, 523 U.S. at 624; *see also Lynn*, 365 F.3d at 1234.    The "actual innocence" exception is a narrow one, applying only in extraordinary cases.    *See Schlup v. Delo*, 513 U.S. 298, 321 (1995); *McKay v. United States*, 657 F. 3d 1190, 1198 (11th Cir. 2011). Critical to the inquiry is the fact that "actual innocence" means factual innocence, and not mere legal insufficiency.    *Bousley*, 523 U.S. at 623 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *McKay*, 657 F. 3d at 1197.    *Bousley* permits the Government to go beyond the existing record and rely on any admissible evidence to rebut a petitioner's claim of innocence. *Bousley*, 523 U.S. at 624.

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

Sanders does not contend he was unaware of his status as a

convicted felon.    Therefore, he cannot demonstrate actual innocence.    In

his arguments in support of his § 2255 motion he admits to having

stipulated at trial that he was a convicted felon.    (ECF No. 75 at 12.)

Even after *Rehaif*, the Government need not prove that he knew he was

prohibited from possessing a firearm, only that he knew he was a convicted

felon and that he knowingly possessed a firearm.    *See United States v.*

*Denson*, 774 F. App'x 184 (5th Cir. 2019) (denying a petition for rehearing

based on *Rehaif*, finding the record showed defendant knew he was a

felon).    The *Rehaif* Court stated that proving a defendant's knowledge of

his status is unlikely to be burdensome because "knowledge can be

inferred from circumstantial evidence."    *Rehaif*, 139 S. Ct. at 2198 (citing

*Staples v. United States*, 511 U.S. 600, 615 n. 11 (1994)); *Bryant*, 2020 WL

353424 at *4 (the fact that defendant had served more than three years'

imprisonment on a prior conviction was sufficient evidence of his

knowledge of his status.)    In this case, Sanders' actions at the time of the

offense conduct, attempting to hide the gun he unlawfully possessed and

threatening the witness who called law enforcement, arguably suggest a

guilty conscience.    Furthermore, as detailed in the PSR and the

Government's response, Sanders had multiple felony convictions, and in at least one case signed a document indicating that the underlying offenses were punishable by more than one year of imprisonment.   (ECF No. 54, PSR ¶¶ 26, 27, 29, 31; ECF No. 97, Exh. A.)

Therefore, even if *Rehaif* is considered to be retroactively applicable to Sanders' case, he is not entitled to relief.   His claim is procedurally defaulted and he cannot show either ineffective assistance of counsel or actual innocence to defeat the procedural bar.

B. Second Motion to Amend

In his second motion to amend based on *Rehaif*, Sanders claims that (1) Title 18 U.S.C. § 922(g)(1) does not state a valid crime because Congress did not incorporate the knowledge requirement into the statute; and (2) the indictment in this case did not charge that Sanders knew he was a convicted felon and thus it does not pass constitutional muster. (ECF No. 95.)   No relief is warranted on either of these claims, as they are also procedurally defaulted, as well as without merit.

1)  Validity of the statute:

Section 922(g)(1), as noted above, does not specifically address the question of scienter—it explicitly requires neither knowledge of the

possession of a weapon nor knowledge of a person's status as a prohibited individual.   Section 924(a)(2) provides the penalty for an individual who "knowingly violates" § 922(g), but even this statute does not specify which portion of the statute "knowingly" modifies.   Nonetheless, Sanders' assertion that § 922(g)(1) fails to state a federal crime as constructed fails under *Rehaif* itself.   The *Rehaif* decision invalidated neither statute; it clarified what the Government is required to prove.   *Rehaif*, 139 S. Ct. at 2200.

2) Validity of the indictment

The superseding indictment in this case charged that Sanders "having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, did knowingly possess a firearm and ammunition in and affecting interstate commerce."   (ECF No. 13 at 1.) The crime was alleged to have occurred in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).   (ECF No. 13 at 2.)   Section 924(e) does not contain the modifier "knowingly."   Because Sanders did not qualify as an armed career criminal under § 924(e), he was adjudicated guilty of violation §§ 922(g)(1) and 924(a)(2). (*Id.*; ECF No. 52 at 1.)   Title 18 U.S.C.

§ 924(a)(2), in contrast, provides penalties for an individual who "knowingly violates" § 922(g).

Sanders now claims that the indictment did not pass constitutional muster because it did not state all the elements of the crime that are required post-*Rehaif.*   He did not previously challenge the indictment, and he now relies heavily on the Eleventh Circuit's decision in *United States v. Martinez*, 800 F. 3d 1293 (11th Cir. 2015).

In *Martinez*, the court was called upon to revisit its affirmance of defendant's conviction under 18 U.S.C. § 875(c) for knowingly transmitting a threatening communication.   The appellate court initially had held that the inquiry for such a conviction was an objective one, not based on defendant's intent.   However, the Supreme Court ruled in *Elonis v. United States*, 135 S. Ct. 2001 (2015) that "what [the defendant] thinks does matter" and remanded for reconsideration of Martinez's challenge to the sufficiency of her indictment in light of *Elonis*.   On remand, the Eleventh Circuit found the indictment's failure to allege defendant's mens rea or facts from which her intent could be inferred rendered the indictment deficient. Sanders claims the same principle is applicable here, although *Martinez* was decided in the context of a direct appeal.

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

At this juncture the law is unsettled.   It does not appear that any

other court has decided the precise issue Sanders presents.   *See United*

*States v. Dowthard,* Case 18-2088, 2020 WL 372137, at *2 (7th Cir. 2020)

(citing *United States v. Cotton*, 535 U.S. 625, 631 (2002), which held that

omission of an element from an indictment is not a jurisdictional defect, and

finding defendant's guilty plea waived any potential challenge to the

indictment); *United States v. Benton*, Case 4:97-866-CMC, 2019 WL

4930184 (D. S.C. Oct. 7, 2019) (declining to consider defendant's

challenge to the indictment issue because it was not within the scope of the

appellate court's order granting permission to file a successive § 2255

motion); *United States v. Bryant*, Cases 11 CR 765, 16 CV 3423; 2020 WL

353424 (E.D. N.Y. Jan. 21, 2020) (rejecting claim in a 2255 that indictment

that omitted one of the required elements failed to charge a federal offense

or bestow subject matter jurisdiction); *Barela v. United States*, No. 19-cv-

868, 13-cr-3892; 2020 WL 519474 (D. N.Mex. Jan. 31, 2020) (holding

indictment charging that defendant knowingly possessed the weapon

comported with *Rehaif*, and if not, no § 2255 relief was warranted because

*Rehaif* is not retroactive on collateral review, citing *Palacios*).[7]

Generally, an indictment is sufficient when it "(1) presents the

essential elements of the charged offense, (2) notifies the accused of the

charges to be defended against, and (3) enables the accused to rely upon

a judgment under the indictment as a bar against double jeopardy for any

subsequent prosecution for the same offense." *United States v.* Wayerski,

624 F. 3d 1342, 1349 (11th Cir. 2010) (quoting *United States v. Woodruff,*

293 F. 3d 1041, 1046 (11th Cir. 2002)).   When a defendant has not

challenged the indictment in the district court, to prevail on a later challenge

the court "must find the indictment sufficient unless it is so defective that it

does not, by any reasonable construction, charge an offense for which the

defendant [was] convicted." *United States v. Flanders*, 752 F. 3d 1317,

---

[7] There are challenges to the sufficiency of indictments lacking the scienter element pending on *direct appeal*. *See, e.g.,* Corrected Supplemental Brief for Appellant, *United States v. Moore*,   No. 17-14370, 2019 WL 4667884 (11th Cir. 2019); Initial Brief for Appellant, *United States v. Marc*, No. 19-10656, 2019 WL 4316386 (11th Cir. 2019); Brief of Appellant at 12, *United States v. Fonville*, No. 19-4316, 2019 WL 4228621 (4th Cir. Aug. 27, 2019).   Additionally, the court notes that, post-*Rehaif*, the Government has corrected deficient indictments by issuing superseding indictments that contain the knowledge element.   *See United States v. Walking Bull*, Case 19-50067-JLV, 2019 WL 4256385 (D. S.D. Sept. 9, 2019) (superseding indictment cured *Rehaif* defect); *United States v. Phyfier*, Case 2:17cr482-MHT, 2019 WL 3546721 (M.D. Ala. Aug. 5, 2019) (second superseding indictment cured *Rehaif* defect).

1329 (11th Cir. 2014); *see also United States v. Conley*, No. 19-5168, 2020

WL 571324 (6th Cir. Feb. 5, 2020).

The *Conley* court upheld on direct appeal a § 922(g) indictment that

tracked the language of the statute without including knowledge of the

prohibited status element.   The court noted that the "requirement that an

indictment allege all of the elements of the offense charged…seeks

primarily to ensure that an accused is reasonably informed of the charge

made against him so that he can prepare a defense."   *Conley,* 2020 WL

571324, at *2.   The Sixth Circuit noted that Conley, (like Sanders in this

case), was not prevented from preparing a defense and that he stipulated

at trial that he had a prior felony conviction.   "Although the stipulation of a

prior felony does not automatically establish knowledge of felony status, it

is strongly suggestive of it."   *Id.*   The same can be said of Sanders.   *See*

*Boose v. Marske*, 2019 WL 4393077, at *3 (W.D. Wisc. 9/13/2019)

(denying request to amend closed 2241—finding record, including

stipulation as to prior felony convictions, provided more than enough

evidence to support jury finding that petitioner was a felon, so he failed to

meet the actual innocence standard); *United States v. Hollingshed*, 940 F.

3d 410 (8th Cir. 2019) (holding that defendant's stipulation that he was a

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

convicted felon did not resolve the issue of whether he knew he was a felon (citing *United States v. Benamor*, 937 F. 3d 1182 (9th Cir. 2019)) but also finding any error in not instructing the jury to find he knew he was a felon did not affect defendant's substantial rights or the fairness, integrity or public reputation of the trial, again citing *Benamor*.)

Therefore, the court concludes that Sanders cannot show actual innocence or ineffective assistance of counsel sufficient to overcome the procedural bar to this claim.   No relief is warranted.

## III.   CONCLUSION

An evidentiary hearing is not necessary to resolve Sanders's claims because "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877.   For the foregoing reasons, the court finds that Sanders has not shown that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Therefore, his motion should be denied in its entirety.

## IV.   CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of

Case Nos.: 4:14cr81/RH/CAS; 4:17cv359/RH/CAS

appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right, despite the unsettled state of the law concerning *Rehaif*.   § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    The motion to vacate, set aside, or correct sentence (ECF No. 75), as amended, be **DENIED**.

2.      A certificate of appealability be **DENIED**.

At Tallahassee, Florida, this 19th day of February, 2020.


          s/ Charles A. Stampelos
          **CHARLES A. STAMPELOS**
          **UNITED STATES MAGISTRATE JUDGE**



                    **NOTICE TO THE PARTIES**

        **Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**